Jasen, J. (dissenting).
The question presented on this appeal is whether the evidence is sufficient to support defendant’s conviction for disorderly conduct in violation of section 240.20 of the revised Penal Law.
At the time of the incident at the dance hall — a place of public assembly — there were about 75 to 100 youths gathered in a ‘ ‘ tight ’ ’ group in the immediate vicinity of the fight between the defendant and De Haas. Loud voices of “ fight, fight ” were heard in the dance hall, resulting in additional persons’ running towards the fight area.
In my opinion, the evidence was more than ample to support defendant’s conviction for violating section 240.20 of the Penal Law, which provides, in pertinent part, that “ [a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior ’ ’.
*250 To sustain the prosecution in this case, it was necessary for the People to establish beyond a reasonable doubt merely that the defendant engaged in fighting in a public place and caused public inconvenience, annoyance or alarm, or recklessly created a risk thereof. It is not necessary for defendant’s acts actually to cause a disturbance of public order, but only to create a likelihood or risk of producing such a disruption. As we recently stated in People v. Todaro (26 N Y 2d 325, 329): “ The contention that the fact of disorder was not established, to the exclusion of the risk that it might come to pass, ignores the very terms of the statute itself.” “ It is enough that disorder was threatened by defendant’s conduct.” (People v. Kennedy, 19 N Y 2d 761, 762.) (See, also, People v. Most, 171 N. Y. 423, 429; People v. Hippie, 263 N. Y. 242, 244.)
It is inferable from the evidence presented at the trial that defendant was aware of and consciously disregarded a substantial and unjustifiable risk that “ public inconvenience, annoyance or alarm” would result from his fighting. For it may be expected that in the light of human experience, and particularly in tune with the life about us, such conduct of the defendant, involved in a fight in a teen-age dance club, crowded with youths, is likely to provoke youthful passions, resulting in public disorder.
The majority, in holding the conduct of the defendant lacking of recklessness such as to engender risk of public disorder, fails to consider the underlying purpose of section 240.20 (subd. 1).
The former disorderly conduct statute (Penal Law, § 722) included acts, such as begging and loitering for immoral purposes, that did not have a tendency to breach the peace. The revisers of the new statute (Penal Law, § 240.20) excluded these acts and significantly narrowed the law to include only those acts tending to disrupt public order, or, to use their modern phraseology, ‘‘ to cause public inconvenience, annoyance or alarm ’ ’. Among those acts enumerated by the revisers as having such tendency, is “ fighting in public ”. (Proposed New York Penal Law, Commission Staff Notes, p. 388.)
Cognizant of the risks to public order that are inherent to fighting in public, the Legislature clearly indicated its intent to specifically proscribe such conduct. The narrow construction given to section 240.20 by the majority has sanctioned unlawful *251 conduct specifically prohibited by the statute. It seems to me that if the conduct of the defendant is not a violation of the statute, it would be difficult to imagine such a violation, short of an actual riot.
Moreover, the majority’s reliance on People v. Perry (265 N. Y. 362) is misplaced. In that case, the three defendants who were convicted of disorderly conduct had been fighting in a restaurant owned by the defendant Perry. At the time the fight started (four o’clock in the morning), the restaurant was closed to the public, and the only other person present, besides the three engaged in fighting, was the cook. In addition to these people, there were three persons who watched the fight from the street in front of the restaurant. In reversing the convictions, we held that acts charged as disorderly conduct must be public in character, and such as actually disturb or threaten to disturb the public peace and quiet. Perry has been consistently followed in a long line of decisions in which we reversed convictions of disorderly conduct where the defendant’s misconduct occurred in a private dwelling where no members of the public were present. (People v. Chesnick, 302 N. Y. 58 [shouting in a private dwelling]; People v. Monnier, 280 N. Y. 77 [abusive language in course of a phone conversation]; People v. Oczko, 272 N. Y. 604 [assault by intoxicated defendant on his wife in their own home]; People v. McCauliff, 267 N. Y. 581 [assault by defendant on his wife in their home].) The factual setting in the case before us is clearly distinguishable from Perry.
The worst of the matter is that the majority’s analysis and disposition leaves the dance hall owner without an effective sanction against those who might create or threaten disorder, except to oust them, perhaps inviting a chain of assaults or disorders. Part of the statute is a preventive law which purports to control a scuffle before it becomes a riot — small or large. This is the very essence of the breach of the public peace to which the disorderly conduct statutes have been aimed since time immemorial.
Accordingly, the judgment of conviction should be affirmed.
Chief Judge Fuld and Judges Burke and Bergan concur with Judge Gibson ; Judge Jasen dissents and votes to affirm in a separate opinion in which Judges Scileppi and Breitel concur.
Judgment reversed, etc.